**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **ADVANTAGE ENVIRONMENTAL** | * | |
| **CONSULTANTS, LLC,** | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Case No. SAG-21-0700** |
| | * | |
| **GROUND ZERO FIELD SERVICES, LLC,** | * | |
| | * | |
| **Defendant.** | * | |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

**MEMORANDUM OPINION**

Plaintiff Advantage Environmental Consultants, LLC ("AEC") filed this action against Defendant Ground Zero Field Services, LLC ("Ground Zero"), asserting claims of breach of contract, negligence, and violations of Pennsylvania statutory law.  ECF 29.  Ground Zero filed a motion to dismiss six counts of the Second Amended Complaint, ECF 30.  The issues have been fully briefed, ECF 34, 35, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the following reasons, Ground Zero's motion will be granted in part and denied in part.

**I.   BACKGROUND**

The following facts are derived from the Second Amended Complaint, ECF 29, and are taken as true for purposes of evaluating Ground Zero's motion to dismiss.  In January, 2020, ACNB Bank hired AEC to perform an environmental assessment and testing work on land owned by the Estate of Boyd E. Rinehart ("Estate") located in Gettysburg, Pennsylvania.  ECF 29 ¶ 4.  ACNB Bank was considering extending financing to another party in connection with the potential sale of the land.  *Id.*

During its Phase I inspection, AEC discovered underground storage tanks ("USTs") containing petroleum. *Id.* ¶ 5. As a result, ACNB Bank hired AEC to conduct a "Phase 2" inspection, which involved "finding or 'clearing' underground obstructions and then boring into the ground near the underground tank(s) to obtain samples that can be examined and tested by AEC for contaminants." *Id.* AEC subcontracted with Ground Zero to perform the requisite underground boring services on the Estate property. *Id.* ¶ 6. Ground Zero "knew and understood that the work to be done was for the benefit of the [ACNB] Bank and the [Estate] landowner—it knew that AEC had been hired to perform an assessment and it was providing the boring services required for the assessment." *Id.* ¶ 11. While performing the subcontracted work, Ground Zero bored through and punctured a UST on the property, potentially releasing the UST's contents into the environment. *Id.* ¶ 7.

The Estate hired an engineering company to investigate the environmental impact of the punctured UST. *Id.* ¶¶ 8, 10. The investigation found contaminants in groundwater and soil samples at levels above those set by the Pennsylvania Department of Environmental Protection ("PADEP"). *Id.* ¶ 10. Left untreated, such contaminants "can lead to cancer, birth defects, and other nervous system disorders" if ingested or inhaled. *Id.* The investigation report concluded that site should be promptly remediated in accordance with PA Code Title 25 § 245 to "minimize potential migration of contamination." *Id.*

The Estate subsequently sought indemnification from AEC for damages arising from the punctured UST. *Id.* ¶ 9. AEC and the Estate engaged in settlement negotiations; Ground Zero, for its part, "refused to become involved in settling the claim." *Id.* AEC paid the Estate $100,000 to settle claims relating to the puncturing incident, and ACNB Bank paid the Estate $25,000 for

the same purpose.  *Id.* ¶ 14.  AEC accepted assignments from the Estate and from ACNB Bank to pursue any claims those entities had against Ground Zero.  *Id.*

The Second Amended Complaint contains eight counts.  ECF 29.  The first three are breach of contract claims asserted by AEC on its own behalf (Count I), as assignee of the Estate (Count II), and as assignee of ACNB Bank (Count III).  The next three are negligence claims asserted on behalf of the same three entities (Counts IV-VI).  The final two claims arise under the Pennsylvania Storage Tank and Spill Prevention Act (hereinafter referred to as "Storage Tank Act" or "the Act"), PA Stat. Ann. Tit. 35 §§ 6021.101, *et. seq.*, (Counts VII-VIII).

## II.   STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss.  *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S.

at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).  However, a court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the

legal remedy sought.  *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

III.   **DISCUSSION**

Ground Zero seeks dismissal of Counts II, III, V, VI, VII, and VIII of AEC's Second Amendment Complaint.  ECF 30.  In support of its motion, Ground Zero makes four primary arguments: (1) that AEC cannot assert breach of contract claims as the assignee of the Estate or ACNB Bank because those entities were not in contractual privity with Ground Zero; (2) that Pennsylvania law's prohibition on the assignment of purely personal tort actions forecloses the negligence claim asserted on behalf of the Estate; (3) that the negligence claim asserted on behalf of ACNB Bank is barred by the economic loss rule; and (4) that the Pennsylvania statutory claims are inapplicable to private suit against Ground Zero.  ECF 10 at 5-8.  This Court will address each contention in turn.

**A. Breach of Contract as Assignee (Counts II and III)**

Counts II and III allege claims for breach of contract by AEC as the assignee of the Estate and ACNB Bank, respectively.  ECF 29 ¶ 20, 25.  The Second Amended Complaint expressly alleges two contracts: the agreement between ACNB Bank and AEC, and the subcontract agreement between AEC and Ground Zero.  ECF 29 ¶¶ 4, 6; *see also id.* ¶¶ 26, 27.  No contract is alleged to have existed between ACNB Bank and Ground Zero, or between the Estate and any other party.  Ground Zero seeks dismissal of Counts II and III due to a lack of privity between it and either the Estate or ACNB Bank.

"In order to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant."  *RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658 (2010).  As such, a complaint alleging breach of contract "must of necessity allege with certainty and

definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff…" *Id.*
at 655 (quoting *Continental Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480, (1977)
(emphasis in original)).  Although privity is normally required for a breach of contract claim, "[t]he
third party beneficiary theory of recovery is a 'limited exception' to the strict privity rule of
contracts." *Gray Constr., Inc. v. Medline Indus., Inc.*, 2020 WL 5816502, at *12 (D. Md. Sept.
30, 2020) (quoting *Sherwood Brands, Inc. v. Levie*, 2006 WL 827371, at *15 (D. Md. Mar. 24,
2006)) (internal citations omitted).  An intended third-party beneficiary may recover for breach of
contract only where the parties to the contract made an express promise-in-fact to the third party.
*See Gray & Son, Inc. v. Md. Deposit Ins. Fund. Corp.*, 83 Md. App. 584, 592 (1990) ("In order to
recover it is essential that the beneficiary shall be the real promisee; i.e., that the promise shall be
made to [the third party] in fact, though not in form.  It is not enough that the contract may operate
to [the third-party's] benefit.").   As a general matter, "standard contractor-subcontractor
arrangements . . . create incidental beneficiaries, but do not meet the requirements of the third-
party beneficiary exception to the contractual privity requirement." *Gray Constr., Inc.*, 2020 WL
5816502, at *13.  Accordingly, a plaintiff seeking to proceed as the third-party beneficiary of a
contractor-subcontractor arrangement must "identify specific allegations demonstrating that it was
clearly intended to be the primary party in interest." *Id.*

AEC does not allege privity between Ground Zero and the Estate, nor between Ground
Zero and ACNB Bank, but argues that its assigned contract claims are nonetheless viable because
"[t]he Estate and ACNB Bank were intended beneficiaries."  ECF 34 at 6-7.  AEC contends that
the Estate's and ACNB Bank's status as third-party beneficiaries is shown by allegations that:

> At the time that Ground Zero contracted with AEC, Ground Zero knew that the
> work it was contracting to do was for the benefit of the Estate and ACNB.  Ground
> Zero knew that AEC had no interest in the real estate in question and was
> performing work at the request and for the benefit of the Estate and ACNB.  Ground

Zero knew that if it punctured an UST it would cause injury to both the Estate,
ACNB, and persons nearby.

ECF 29 ¶¶ 22, 26.  The question then, is whether AEC has plausibly alleged that the Estate and

ACNB Bank were intended third-party beneficiaries to the contract between AEC and Ground

Zero.  This Court concludes that it has not.

The case of *Gray Constr., Inc.*, 2020 WL 5816502, is instructive.  Plaintiff Medline, a

distributor of medical supplies, entered into a sales contract to purchase real property from York,

subject to the completion of specified work on the site prior to delivery.  *Id.* at *2.  York

subcontracted with another company, GTA, for services in connection with the outstanding work.

*Id.*  In subsequent litigation, Medline sought damages for GTA's alleged breach of contract with

York.  In its analysis, the court acknowledged that while contractor-subcontractor arrangements

generally do not give rise to third-party beneficiaries, such beneficiaries may be recognized where

"the language of the instrument and the surrounding circumstances demonstrate the parties'

intention to recognize a person or class as a primary party in interest."  *Id.* at *13.  This intent was

demonstrated by language in the contract between York and GTA, which (1) specified that GTA's

work must conform to specifications in Medline's and York's sales contract; and (2) required GTA

to certify directly to Medline that the work was completed in accordance with Medline's and

York's sales contrast.  *Id.*

In contrast to *Gray Constr., Inc.*, AEC merely alleges that Ground Zero had knowledge

that its contract with AEC was for the ultimate benefit of third parties.  But, as Ground Zero

observes, recognizing a third-party beneficiary on this basis alone would allow a limited exception

to swallow the rule, functionally obviating the strict privity requirement.  *See* ECF 30 at 10

(arguing that under AEC's interpretation "all contractor-subcontractor relationships would

establish intended third-party beneficiaries because all subcontractors are generally aware that

their work is for the benefit of a third-party.").[1]   Simply put, the facts alleged in the Second
Amended Complaint are insufficient to remove this case from the realm of standard contractor-
subcontractor agreements.  In the absence of contractual privity, neither ACNB Bank nor the Estate
could bring a breach of contract claim against Ground Zero.  Counts II and III will therefore be
dismissed.

### B.  Negligence as Estate Assignee (Count V)

Count V alleges a negligence claim on behalf of the Estate.  Ground Zero contends that
Count V fails as a matter of law "because unliquidated tort claims are generally personal and
therefore cannot be assigned to third parties."  ECF 30 at 11.

"The assignability of a cause of action in tort has vexed the courts of Pennsylvania for
some time." *Lemley v. Pizzica*, 36 Pa. D. & C.2d 327, 328 (Pa. Com. Pl. 1964).  This confusion is
somewhat understandable, given that "many kind of tort claims are assignable, and the distinction
between assignability and non-assignability is quite complex." *Id.* at 329.  Pennsylvania courts
parsing this distinction have concluded that strictly personal causes of action—or those that
"peculiarly adhere to the person" who suffered them—are not assignable. *Id.*  *See, e.g.*, *Marsh v.
Western New York & Pennsylvania Railway Co.*, 204 Pa. 229 (1903) (wrongful death claim is not
assignable); *Sensenig v. Pennsylvania R. Co.*, 229 Pa. 168, 172 (1910) (claim for discrimination
against a shipper in railroad rates is the personal privileged of the aggrieved party); *Hurley v.*

---

[1] The caselaw cited by AEC in opposition is inapposite.  Each case involved third-party beneficiaries that
were either expressly named in the contract, or who were intimately involved in the contract's formation
and execution, such that their beneficiary status was known to the contracting parties. *Parlette v. Parlette*,
88 Md. App. 628, 637 (1991) (insured's mother is an intended third-party beneficiary to a contract between
a father and son where father expressly agreed to list mother as the designated beneficiary of son's life
insurance policy); *Shofer v. Stuart Hack Co.*, 124 Md. App. 516, 529, (1999) (participant in employee
pension plan is a third-party beneficiary of contract to create a pension plan for employees); *Lawley v.
Northam*, 2011 WL 6013279, at *14 (D. Md. Dec. 1, 2011) (finding issue of material fact as to whether
homebuyer's daughter was a third-party beneficiary of contract between buyer and seller where the seller
knew that daughter would be living in property, daughter executed all documents necessary for contract
formation, and attended home inspection and closing unaccompanied by her mother).

*Hurley*, 342 Pa. Super. 156, 160 (1985) (claim for personal injury is not a property right capable of assignment).  Alternatively, causes of action that are separable from the person, such that they would survive to a decedent's personal representative, are assignable.  *Maxon v. Chaplin*, 9 Pa. D. & C.2d 649, 650 (Pa. Com. Pl. 1957) ("Generally it may be said that if a statute makes a cause of action ex delicto for injury to property survivable, the cause of action is assignable.").  From these propositions, courts have concluded that tortious injury to property is sufficiently separable from a person, such that those claims are assignable under Pennsylvania law.  *Lemley*, 36 Pa. D. & C.2d at 330 ("A right of action in tort for injury to one's property or estate is generally assignable . . . actions for such torts as trespass de bonis asportatis . . . or for trespass on or injury to lands as by wrongful cutting and carrying away timber are properly assignable." internal quotations omitted)); *see also id.* at 31 ("damages relating to "automobiles, to land, to miscellaneous tangible personalty, and for business interruption are assignable").

Liberally construed, AEC's Second Amended Complaint plausibly alleges that the Estate suffered property damages as a result of Ground Zero's negligence.  *See* ECF 29 ¶¶ 6, 10.  As such, the claim is separable from the Estate, and is assignable under Pennsylvania law.  This conclusion is consistent with Pennsylvania courts' repeated determinations that "compensatory tort claims for damage to property are assignable prior to judgment."  *See Chissler v. Nationwide Ins. Co.*, 67 Pa. D. & C.2d 225, 228 (Pa. Com. Pl. 1974) (noting that causes of action for assumpsit and trespass are assignable as "tort[s] against the property of the assignor rather than against his person."); *Lemley*, 36 Pa. D. & C.2d at 331 (concluding that trespass for negligent injury to real estate and personal property are assignable); *Maxon*, 9 Pa. D. & C.2d at 651 (permitting assignment of trespass for damages to real property); *Hutchison v. Ash*, 74 Pa. D. & C. 481 (1949) (determining that wrongful entry and carrying away timber is assignable and observing that "[t]he trend of

judicial decisions as to the assignability of certain"); *Moffitt v. Vesta Coal Co.*, 17 Wash. 204 (1936) (finding that damages for tortious injury to property may be assigned).  Thus, the negligence claim on behalf of the Estate in Count V survives the motion to dismiss.

### C.  Negligence as ACNB Bank Assignee (Count VI)

Count VI alleges negligence on behalf of ACNB Bank.  Specifically, the Second Amended Complaint alleges that as a result of Ground Zero's negligence, ACNB Bank suffered damages in the amount of its settlement payment to the Estate, ECF 29 ¶ 43.  Ground Zero seeks dismissal of Count VI, arguing that tort claims for purely economic loss are not actionable.

Under Pennsylvania law, the economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage.  'Purely economical loss, when not accompanied with or occasioned by injury, is considered beyond the scope of recovery even if a direct result of the negligent act.'" *Donaldson v. Davidson Bros.*, 144 A.3d 93, 101 (Pa. Super. 2016) (quoting *Margolis v. Jackson*, 543 A.2d 1238, 1240 (Pa. Super. 1988)).[2]  The economic loss doctrine operates similarly in Maryland, barring tort liability for purely economic loss unless: (1) the parties are in privity with one another; or (2) the alleged negligent conduct resulted in "physical injury or risk of severe physical injury or death."  *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 612, (2017).

ACNB Bank's monetary payment to the Estate is a prototypical claim for purely economic loss.  *See* ECF 29 ¶ 43 ("[d]ue to Ground Zero's negligent actions and omissions, ACNB Bank has

---

[2] In its opposition, AEC contends that Count VI is viable because Ground Zero owed a duty of care to ACNB Bank under Pennsylvania law.  ECF 34 at 20-22 (analyzing Ground Zero's duty to ACNB Bank against the five-factor test in *Brisbine v. Outside In Sch. of Experiential Educ., Inc.*, 799 A.2d 89, 95 (Pa. Super. Ct. 2002)).  This argument misses the mark.  The question is not whether AEC owed a duty to ACNB Bank, but whether ACNB Bank suffered damages recoverable in tort.

suffered damages in the amount of the ACNB Payment [to the Estate].").[3]  Therefore, absent an applicable exception, the economic loss doctrine will bar AEC's negligence claim as the assignee of ACNB Bank.  AEC raises several arguments to contest the application of the economic loss doctrine to this claim.  First, AEC argues that the doctrine is inapplicable because "[a] professional is subject to liability in tort for economic loss caused by the negligent performance of an undertaking to serve a client."  ECF 34 at 13-14 (quoting Restatement (Third) of Torts: Liab. For Econ. Harm § 4 (2020)).  Be that as it may, AEC has only alleged that it—not ACNB Bank—was a client of Ground Zero.  Next, AEC contends that its claim fits within the exception under Maryland law for parties in privity, or for whom there is an "intimate nexus."  ECF 34 at 15-16.  As explained above, however, this Courts finds that there is no privity as between ACNB Bank and Ground Zero.  Finally, AEC asserts that its claim is viable because Ground Zero's alleged negligent conduct resulted in the risk of severe physical injury.  ECF 34 at 17-20 ("[T]he risk of serious harm in the instant case is obvious.  The contamination of groundwater poses a known risk to the health of anyone whose ground water [*sic*] is contaminated by Ground Zero's negligent conduct.").  AEC's argument is unavailing.  The Second Amended Complaint alleges that the puncturing incident led to a release of contaminants, which, if ingested or inhaled, "can lead to cancer, birth defects, and other nervous system disorders."  ECF 29 ¶ 10.  Certainly, these conditions constitute serious physical injury.  Critically, however, there are no allegations in the Second Amended Complaint to suggest that ACNB Bank or its personnel were at any risk of inhaling or ingesting these contaminants.  Indeed, the Second Amended Complaint contains no

---

[3] Somewhat bewilderingly given the allegations in its Second Amended Complaint, AEC also asserts that "[t]he economic loss doctrine also does not apply [to Count VI] because Plaintiff is not suing for purely economic losses but, rather, for pecuniary damage arising from physical harm to the plaintiff's property." ECF 34 at 14-15.  AEC has alleged that the Estate, not ACNB Bank, owned the property in question.  ECF 29 ¶ 2.  Any alleged property damage would be recoverable, and thereby assignable, by the Estate, and not ACNB Bank.

allegations that would permit the Court to infer that representatives of ACNB Bank were ever on site, or within reasonable proximity of, the release.  This fact distinguishes AEC's claim from all of its cited caselaw, in which the plaintiffs themselves were exposed to the unreasonably dangerous conditions created by defendants' alleged negligence.  *See Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 517 A.2d 336 (Md. 1986) (condominium owners exposed to unreasonably dangerous condition due to builders' negligence); *U.S. Gypsum Co. v. Mayor and City Council of Baltimore*, 647 A.2d 405 (Md. 1994) (residents of the City of Baltimore exposed to risks of asbestos); *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257 (Md. 2007) (manufacturer subject to liability to automobile owner in light of potential for serious physical injury caused by defective seatbacks); *Cash & Carry Am., Inc. v. Roof Sols., Inc.*, 117 A.3d 52 (Md. Spec. App. 2015) (subcontractor subject to liability for fire on homeowner's roof that exposed homeowners to risk of severe physical injury).

AEC may not recover on behalf of ACNB Bank for generalized safety concerns to which ACNB Bank was not exposed, created by a party with whom ACNB Bank was not in privity.  Thus, ACNB Bank has no viable negligence claim, and AEC cannot assert such a claim as ACNB Bank's assignee.  Count VI will be dismissed without prejudice.[4]

### D.  Pennsylvania Storage Tank Act (Counts VII and VIII)

Finally, AEC's Second Amended Complaint alleges claims on behalf of itself, the Estate, and ACNB Bank under the Storage Tank Act, PA Stat. Ann. Tit. 35 §§ 6021.101, *et. seq*.  The Storage Tank Act authorizes private suits to recover costs for cleanup and diminution in property value, § 6021.1305(c), and to abate nuisances, § 6021.1305(a), arising from violations of the Act.  *See also Centolanza v. Lehigh Valley Dairies, Inc.*, 540 Pa. 398 (1995).  Private suits under the

---

[4] This Court need not conclusively decide the choice of law issue in ruling on this partial motion to dismiss, as Count VI would be barred by the economic loss doctrine regardless of which state's law is applied.

Act are cognizable against a storage tank "owner, operator, landowner, or occupier." § 6021.1305(c). Ground Zero contends that both counts fail as a matter of law because it is not an "operator" subject to private suit under the Storage Tank Act. *See* § 6021.1305(c).

The Storage Tank Act defines an operator as "[a]ny person who manages, supervises, alters, controls or has responsibility for the operation of a storage tank." § 6021.103. AEC alleges that Ground Zero is an "operator" because "Ground Zero punctured the UST. By definition, the UST was altered by the work Ground Zero conducted." ECF 34 at 30. No definition for "alter" is provided in the Storage Tank Act; caselaw addressing the term has assigned the word its ordinary meaning. *See Delaware Coca-Cola Bottling Co. v. S & W Petroleum Serv., Inc.*, 894 F. Supp. 862, 867 (M.D. Pa. 1995) ("The ordinary meaning of alter is 'to make different in some particular, as size, style, course, or the like; modify . . . to change; become different or modified.'" (quoting Random House Dictionary of the English Language 60 (2d ed. 1987))). Employing this definition, courts have concluded that the Storage Tank Act "therefore broadens the definition of 'operator' to include activities which normally would not be considered the operation of a storage tank." *Id.* (holding that "defendant's removal of old tanks and installation of new tanks made it an operator within the meaning of the Act."). Still, the definition of "operator" is not boundless. Courts have determined that persons are not rendered "operators" under the Storage Tank Act merely by supplying fuel for, or completing installation services on, a UST. *Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1082 (2013) (supplying gasoline for a UST does not make defendant an "operator" under the Storage Tank Act); *O.D. Anderson, Inc. v. Empaco Equip. Corp.*, 2019 WL 1395606, at *4 (W.D. Pa. Mar. 20, 2019) (installing new USTs did not constitute "alteration" necessary to classify defendant as an "operator").

AEC fails to allege sufficient facts to bring Ground Zero within the meaning of "operator" under the Storage Tank Act.  The Second Amended Complaint asserts that Ground Zero punctured a UST while attempting to bore into the surrounding area to obtain soil samples; it allegedly did so, despite being "expected to make sure that it is not going to drill into tanks, utilities, or other underground structures."  ECF 29-1 ¶¶ 5-6.  AEC does not allege that Ground Zero provided supply or maintenance services to fuel, install, update, or replace the UST.  Indeed, Ground Zero was not supposed to make any contact at all with USTs on the Estate's property.  In this regard, Ground Zero's "operation" of the UST is even more tenuous than the defendants that fueled, *Hovis*, 64 A.3d at 1082, or installed, *O.D. Anderson, Inc.*, 2019 WL 1395606 at *4, storage tanks, and were subsequently found not to be operators.  While it is true, in the most literal sense, that a punctured UST has been altered from its pre-punctured state, this fact alone cannot render Ground Zero a UST operator.  Such an interpretation would encompass any person that inadvertently affects a storage tank in any way, including, for instance, an automobile driver that—by accidentally crashing into a roadside storage tank—becomes an operator of the "altered" tank. AEC's proffered interpretation would obviate the Storage Tank Act's enumerated categories of persons subject to private suit.  *See* 35 Pa. Stat. Ann. § 6021.1305 (authorizing private actions against a storage tank "owner, operator, landowner or occupier").  Thus, the allegations in the Second Amended Complaint are insufficient to render Ground Zero an operator subject to claims by AEC, the Estate, or ACNB Bank under the Storage Tank Act.

Moreover, to the extent that Count VIII is premised on common law, rather than statutory, public nuisance, it is subject to dismissal for failure to allege interference with a right common to the general public.  "A public nuisance is 'an unreasonable interference with a right common to the general public,' such as the right to clean public water and fresh air in public spaces." *Baptiste*

14

*v. Bethlehem Landfill Co.*, 965 F.3d 214, 220 (3d Cir. 2020) (quoting *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 315 (3d Cir. 1985)); *see also Machipongo Land & Coal Co. v. Com.*, 569 Pa. 3, 40 (2002) (quoting Restatement (Second) of Torts § 821B.).  To succeed on a private claim for public nuisance, "the plaintiff must have suffered a special or peculiar harm, different from the harm suffered by the general public."  *Duquesne Light Co. v. Pennsylvania Am. Water Co.*, 850 A.2d 701, 704 (Pa. Super. Ct. 2004).

The Second Amended Complaint is devoid of any allegations suggesting that Ground Zero's conduct caused any interference with a public right, such as the right to clean public water. At most, the Second Amended Complaint alleges that prompt remediation was required "to minimize potential migration" of carcinogenic contaminants into soil and groundwater on the property of the Estate.  ECF 29 ¶ 10.  Importantly, it does not claim that any such migration occurred, or that contaminants spread to neighboring properties or affected persons within the broader community.  The Court will not assume facts sufficient to infer that the punctured UST interfered with the rights of the public.  The facts that have been alleged in the Second Amended Complaint fail to state a plausible common law public nuisance claim.[5]

---

[5] As stated above, damages for the tort of public nuisance—to the extent such a nuisance is shown—are only recoverable by a plaintiff who suffered a special or peculiar harm.  *Duquesne Light Co.*, 850 A.2d at 704.  Under Pennsylvania law, a showing of lost profits or purely economic loss is unlikely to suffice as a requisite peculiar harm.  *See id.* at 705 (stating that as a tort, the prohibition on recovery for purely economic loss likely applies).  Any public nuisance claim on behalf of ACNB Bank, therefore, would be subject to dismissal for the same reasons as those discussed in III.C., *infra*.

## IV.     CONCLUSION

For the reasons set forth above, Ground Zero's Partial Motion to Dismiss, ECF 30, is GRANTED as to Counts II, III, VI, VII, and VIII, and DENIED as to Count V.  A separate Order follows.


Dated: October 15, 2021                                     _____/s/_____
                                                            Stephanie A. Gallagher
                                                            United States District Judge